UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOBBIE WAGNER<br>and CHADWICK INNISS,<br>individually and on behalf of all other<br>similarly situated individuals,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORP.<br><br>　　　　　Defendant. | Civil Action No. 1:21-cv-09443<br><br>**JURY DEMANDED** |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

1.　This is a class and collective action brought by Bobbie Wagner and Chadwick Inniss on behalf of themselves and all other similarly situated employees who have worked for Defendant International Business Machines Corporation (hereinafter "IBM"), alleging that IBM, through its layoff and hiring practices, violated (1) the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq.*; (2) the Vermont Fair Employment Practices Act ("VFEPA"), 21 V.S.A. §§ 495, 495b (with respect to employees who worked in Vermont); and (3) the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, §§ 20-601 *et seq.* (with respect to employees who worked in Maryland).  As described further below, IBM has discriminated, and continues to discriminate, against its older workers, both by laying them off (or terminating or constructively discharging them) disproportionately to younger workers and then not hiring them for open positions. Over the last several

1

years, IBM has been in the process of systematically reducing its employment of older workers in order to build a younger workforce. Between 2012 and the present, IBM has laid off or otherwise terminated at least 20,000 employees over the age of forty. Such discriminatory termination and hiring practices constitute unlawful discrimination under the ADEA and state anti-discrimination law.

2. Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).[1]

3. Plaintiffs also bring these claims under the laws of the states in which they have worked pursuant to Fed. R. Civ. P. 23.

## II.  **PARTIES**

4. Plaintiff Bobbie Wagner is fifty-four (54) years old and resides in St. Johnsbury, Vermont. Ms. Wagner was separated from IBM, effective March 15, 2021.

---

[1] Plaintiffs' allegations in this case are materially similar to those set forth in Rusis v. International Business Machines Corp., Civ. Act. No. 1:18-cv-08434, Second Amended Complaint, Dkt. 180 (S.D.N.Y. July 22, 2021). Plaintiffs are bringing this as a separate case, rather than simply opting into Rusis because the court in that case ruled that it would not (for now at least) allow any further opt-ins after March 26, 2021 (subject to a possible reopening of the opt-in period, should Plaintiffs there be permitted to file and obtain court-authorized notice to the putative class). Plaintiffs here assert that they, and any opt-ins to this case, may nevertheless "piggyback" on earlier EEOC charges, including those filed by the named Plaintiffs in Rusis. See Tolliver v. Xerox Corp., 918 F.2d 1052, 1057 (2d Cir. 1990) ("[t]he purpose of the charge filing requirement is fully served by an administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a similar grievance elect to join a preexisting suit **or initiate their own**." Id.) (emphasis added).

5. Plaintiff Chadwick Inniss is fifty-three (53) years old and resides in Temple Hills, Maryland. Mr. Inniss worked for IBM for approximately twenty-eight (28) years, before his separation from IBM, effective on July 31, 2020

6. Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

7. Plaintiff Wagner also brings this case as a class action on behalf of herself and all similarly situated individuals who worked for IBM in Vermont, pursuant to Fed. R. Civ. P. 23.

8. Plaintiff Inniss also brings this case as a class action on behalf of himself and all similarly situated individuals who worked for IBM in Maryland, pursuant to Fed. R. Civ. P. 23.

9. Defendant International Business Machines Corp. is a New York corporation with its principal place of business in Armonk, New York. IBM is an American multinational technology business that offers services and goods ranging from computing, cloud platforms, advanced analytics tools and others.

### III. JURISDICTION AND VENUE

10. This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq*. This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

11. The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in Armonk, New York.

## IV. STATEMENT OF FACTS

12. Plaintiffs were among thousands of IBM employees to be separated from IBM recently, as the result of a shift in IBM's personnel focus to the generation of workers referred to as "Millennials" (which IBM defines as the generation born after 1980) that began in approximately 2012. At that time, IBM began a program to reform itself into a leading company in the fields of cloud services, big data analytics, mobile, security and social media. As a part of this transformation, IBM endeavored to begin heavily recruiting Millennials in order to make the face of IBM younger, while at the same time pushing out older employees. At the direction of IBM's CEO Virginia Rometty and other corporate leaders, IBM instituted a plan to bring in 25,000 younger employees that it referred to as "Early Professional Hires" or "New Collar Hires." At the same time, in order to make room for these younger workers, IBM sought to reduce its headcount of older workers over a period of several years.

13. In an article published by ProPublica following an investigation of IBM's hiring practices, ProPublica reported that it estimates that "in the past five years alone, IBM has eliminated more than 20,000 American employees ages 40 and over, about 60 percent of its estimated total U.S. job cuts during those years." Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

14. As reported by ProPublica, IBM's shift in focus toward the Millennial workforce came as "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." Id. In response to that problem, IBM's CEO Virginia Rometty "launched a major overhaul that aimed to make IBM a major player in the emerging technologies of cloud services, big data analytics, mobile security and social media, or what came to be known inside as CAMS" and "sought to sharply increase hiring of people born after 1980." Id. Additionally, IBM embraced the belief that "CAMS are driven by Millennial traits." Id.

15. At a 2014 IBM conference called "Reinvention in the Age of the Millennial," IBM announced its intent to "embrace the 'Millennial mindset'" and announced that "What's good for Millennials is good for everyone." See Reinvention in the Age of the Millennial, https://ibmcai.com/2014/12/16/reinvention-in-the-age-of-the-millennial/ (Dec. 16, 2014).

16. IBM's CEO Virginia Rometty directly and explicitly made clear her desire to remove older employees from IBM in order to make room for younger hires and to increase the proportion of younger workers in business units throughout the company. She communicated with IBM's Chief Human Resources officer Diane Gherson regarding this desire, and they made plans and directed other top officials at the company to increase the proportion of younger workers through mass layoffs (called "Resource Actions"), as well as through other tactics, including not hiring back these older workers into other open positions.

17. Throughout the company, IBM implemented this plan to replace its headcount of older workers with younger ones. In conversations and corporate

5

planning documents, executives and managers used coded terms such as "continuous talent refresh," "correcting seniority mix," and "shifting headcount" toward "Early Professional Hires." Indeed, IBM had a goal of achieving 55% Early Professional Hires by 2020. In 2017, IBM CEO Virginia Rometty boasted on CNBC's Mad Money that 50% of all IBM employees were now Millennials.

18. IBM has reduced the population of its older workers through several methods. Many older employees have been laid off through reductions in force or layoffs, which IBM refers to as "Resource Actions." (Meanwhile, IBM shields its youngest employees from layoff, exempting recent college graduates following their hire date.) IBM has also reduced its population of older workers by terminating older employees for pretextual reasons, or by constructively discharging them, or by conditioning their continued employment on untenable choices they are unlikely to accept, such as relocation.

19. Additionally, while older workers who lost their jobs through layoffs that IBM calls "Resource Actions" have frequently been encouraged to use IBM's internal hiring platform to apply for other open IBM positions for which they are qualified, IBM has generally prevented workers subject to these layoffs to be hired into other positions. IBM has put obstacles in the way of such workers being hired into different positions, thus helping to ensure that these older workers are removed from the company and younger workers placed into open positions.

20. Prior to 2014, IBM provided lists to any workers who were laid off, which disclosed the positions and ages of all the employees laid off from their business units at the same time, as well as a list showing the positions and ages of all those in the

business units that were not being laid off.  IBM distributed this information, presumably, in order to comply with the Section 626(f) of the ADEA, which requires disclosure of this information if an employer seeks to obtain a release of age discrimination claims from a group of employees. However, in 2014, in an apparent effort to conceal its systematic effort to shed its older workers, IBM stopped disclosing this information to the employees. While IBM could no longer include a release of ADEA claims in its severance agreements with its employees as a result, it opted instead to require its employees to agree to binding individual arbitration of those claims, in order to receive a small severance payment.  Many IBM employees who were laid off, including the named plaintiffs in this action, rejected the severance offer and did not sign the arbitration agreement.

21.     On approximately August 31, 2020, the Equal Employment Opportunity Commission ("EEOC") issued a classwide determination following an investigation of age discrimination at IBM. In that determination, the EEOC found reasonable cause to believe that IBM discriminated older employees through layoffs that took place between 2013 and 2018.  The EEOC explained in this determination letter that its investigation uncovered "top-down messaging from IBM's highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." The EEOC revealed that it had analyzed data from across the company and that it was primarily older workers (85%) who were in the total potential pool of those considered for layoff.  The EEOC stated in the determination letter that its conclusion was supported by dozens of interviews it had

conducted across the company, and it rejected IBM's attempt to justify and defend each of the 58 layoffs analyzed in that investigation through individualized explanations.

22. Plaintiff Wagner worked at IBM as a Services Client Representative. She was constructively discharged by IBM, effective March 15, 2021, when she was 54 years old. Although she was an excellent performer, IBM removed her from her profitable accounts and assigned them to other individuals, refused to permit her to transfer to another position at IBM for which she had received a job offer in December 2020 (instead offering this position to a younger employee who had significantly less experience than Plaintiff Wagner), and ultimately leaving Ms. Wagner with only accounts that had little to no potential for profit. As a result of this discriminatory treatment based on Ms. Wagner's age, she was constructively discharged, as she had no choice but to resign from her position.

23. Plaintiff Inniss began working for IBM in October 1992 and eventually became a Senior IT Specialist. In mid-2020, when Plaintiff Inniss was 52 years old, he was told by his manager that that he was being placed on a performance improvement plan ("PIP"). Plaintiff Inniss was put on this PIP despite the fact that he had received positive performance reviews throughout his career at IBM, including in his 2019 performance review. On June 29, 2020, despite the fact that Plaintiff Inniss performed well, he received a letter from IBM stating that he was being terminated, effective on July 31, 2020. At the time of his termination, Plaintiff Inniss was one of the oldest employees on his team. Plaintiff Inniss' job responsibilities at IBM were then redistributed to younger individuals.

## V.  COLLECTIVE ACTION ALLEGATIONS

24. Plaintiffs bring this case as a collective action on behalf of IBM employees who have worked anywhere in the country who may opt in to this action.

25. These employees who may opt in to this collective action are similarly situated to the named Plaintiffs. They have all worked for IBM and have all been subjected to IBM's policy and practices of disproportionately targeting for separation (through pretextual termination, constructive discharge, or layoff) employees over forty (40) years old, and then precluding those employees from consideration for other open internal IBM positions for which they are qualified.

## VI.  CLASS ACTION ALLEGATIONS

26. Plaintiffs also bring this case as a class action on behalf of IBM employees over the age of forty (40) and were laid off, who have worked for IBM in Vermont or Maryland.

27. These Vermont and Maryland classes all meet the prerequisites of Fed. R. Civ. P. 23 in that:

   a. The classes are so numerous that joining all members is impracticable. The exact number of the members of each class is unknown, but it is estimated that there have been well more than forty (40) IBM employees over the age of forty (40) who have been laid off in each of these states. As a result, joinder of all of these individuals is impracticable.

   b. There are questions of fact and law common to all of the putative class members, because all of those individuals were subject to IBM's uniform effort to shift its personnel focus to Millennials, leading to the unlawful

    termination or constructive discharge of a disproportionate number of older IBM employees, in violation of the laws of their respective states.

c. With respect to these common issues, the claims of the named plaintiffs are typical of the claims of IBM employees over the age of forty (40) who had worked in each of these states and been laid off by IBM.

d. Plaintiffs and their counsel will fairly and adequately represent the interests of each class. The named plaintiffs have no interests adverse to or in conflict with the class members whom they propose to represent. Plaintiffs' counsel have litigated and successfully resolved many dozens of class action cases involving employment law and have substantial experience representing employees in discrimination claims.

e. The questions of law or fact common to all members of each class predominate over any questions affecting only individual members. The common questions include, among other things, whether IBM disproportionately ended the employment of older workers, and whether IBM refused to consider hiring those employees to other open positions for which they were qualified due to their age.

f. Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery for many IBM employees in these states, briefing of legal issues, and court proceedings.

**VII.      EXHAUSTION OF ADMINISTRATIVE REMEDIES**

28. Plaintiffs timely filed Charges of Discrimination with the EEOC. More than sixty (60) days have passed since they submitted those Charges of Discrimination.

## COUNT I

(Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*)
(On Behalf of Plaintiffs and Opt-In Plaintiffs)

29. Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

30. IBM's conduct in systematically targeting for layoff employees who are older than forty (40), including Plaintiffs, and refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the ADEA. IBM's violation of the ADEA has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs and similarly situated employees have lost their jobs and have been denied the fair opportunity to obtain new positions with IBM.

31. This claim is brought on behalf of a class of IBM employees across the country who may choose to opt in to this case, pursuant 29 U.S.C. §§ 216(b), 626(b).

## COUNT II

(Vermont Fair Employment Practices Act 21 V.S.A. §§ 495, 495b)
(On Behalf of Plaintiff Wagner and Class)

32. Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

33. Plaintiff Wagner brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in Vermont and have been subjected to the discriminatory practices described herein.  IBM's conduct in systematically separating employees who are older than forty (40), including Plaintiff Wagner, and refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the Vermont Fair Employment Practices Act, V.S.A. §§ 495, 495b. IBM's violation of Vermont law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Wagner and similarly situated employees who have worked in Vermont have lost their jobs and have been denied the fair opportunity to obtain new positions with IBM.

## COUNT III

(Maryland Fair Employment Practices Act,
Md. Code Ann., State Gov't, §§ 20-601 *et seq.*)
(On Behalf of Plaintiff Inniss and Class)

34. Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

35. Plaintiff Inniss brings this claim as a class action, pursuant to Fed. R. Civ.

P. 23, on behalf of IBM employees who have worked in Maryland and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Inniss, and refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't, §§ 20-601 *et seq.* IBM's violation of Maryland law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Inniss and similarly situated employees have lost their jobs and have been denied the fair opportunity to obtain new positions with IBM. Plaintiff Inniss brings this claim pursuant to Md. Code Ann., State Gov't, § 20-1013.

## **JURY DEMAND**

Plaintiffs request a trial by jury on all claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

    1.    Permission for Plaintiffs to notify other IBM employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

    2.    Find and declare that IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*;

    3.    Certify a class action pursuant to Fed. R. Civ. P. 23 under Count II and appoint Plaintiff Wagner and her counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in Vermont, and were laid off, constructively discharged, or terminated for pretextual reasons, and/or were not hired back into other positions for which they were qualified;

4. Certify a class action pursuant to Fed. R. Civ. P. 23 under Count III and appoint Plaintiff Inniss and his counsel to represent a class of IBM employees who were over the age of forty (40), worked for IBM in Maryland, and were laid off, constructively discharged, or terminated for pretextual reasons, and/or were not hired back into other positions for which they were qualified;

5. Award compensatory damages, including back pay and front pay, and any other damages available, in an amount according to proof;

6. Reinstate Plaintiffs and similarly situated employees to their positions;

7. Award liquidated damages and all appropriate statutory and regulatory damages;

8. Award all costs and attorney's fees incurred prosecuting this claim;

9. Award interest;

10. Issue injunctive relief in the form of an order directing IBM to comply with the ADEA and applicable state law.

11. Any other relief to which Plaintiffs and class members may be entitled.

Dated: November 15, 2021

          Respectfully submitted,

          BOBBIE WAGNER and CHADWICK INNISS,
          on behalf of themselves
          and all others similarly situated,

          By their attorneys,

          /s/ Shannon Liss-Riordan
          Shannon Liss-Riordan (NY Bar No. 2971927)
          Thomas Fowler,
          *pro hac vice* forthcoming
          Zachary Rubin (NY Bar No. 5442025)
          LICHTEN & LISS-RIORDAN, P.C.
          729 Boylston Street, Suite 2000
          Boston, MA 02116
          (617) 994-5800
          Email: sliss@llrlaw.com, tfowler@llrlaw.com,
          zrubin@llrlaw.com