# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARK MCCORMICK, MATTHEW LOVE, ROBERT SNYDER, ALISON HEINTZ, WILLIAM RICE, and MARIA STRATAKIS, individually and on behalf of all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORP. <br><br> Defendant. | Civil Action No. 1:21-cv-09443 <br><br> **JURY DEMANDED** |

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1.      This is a class and collective action brought by Mark McCormick, Matthew Love, Robert Snyder, Alison Heintz, William Rice, and Maria Stratakis on behalf of themselves and all other similarly situated employees who have worked for Defendant International Business Machines Corporation (hereinafter "IBM"), alleging that IBM, through its layoff and hiring practices, violated (1) the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 *et seq.*; (2) New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* (with respect to employees who worked in New York); and (3) the Massachusetts Anti-Discrimination Law, G.L. c. 151B, § 4(1B). As described further below, IBM has discriminated, and continues to discriminate, against its older workers, both by laying them off (or terminating or constructively discharging them) disproportionately to younger workers and then not hiring them for open positions. Over

the last several years, IBM has been in the process of systematically reducing its

employment of older workers in order to build a younger workforce. Between 2012 and

the present, IBM has laid off or otherwise terminated at least 20,000 employees over

the age of forty. Such discriminatory termination and hiring practices constitute unlawful

discrimination under the ADEA.

2.      Plaintiffs bring these claims on behalf of themselves and similarly situated

IBM employees across the country who may choose to opt in to this action pursuant to

29 U.S.C. §§ 216(b), 626(b).[1]

3.      Plaintiffs Rice and Stratakis also brings class claims under the laws of

New York (Plaintiff Rice) and Massachusetts (Plaintiff Stratakis) pursuant to Fed. R. Civ.

P. 23.

## II. <u>PARTIES</u>

4.      Plaintiff Mark McCormick is sixty-six (66) years old and resides in

Wilmette, Illinois. Mr. McCormick worked for IBM for approximately thirty-one (31) years

---

[1]      Plaintiffs' allegations in this case are materially similar to those set forth in <u>Rusis v. International Business Machines Corp.</u>, Civ. Act. No. 1:18-cv-08434, Second Amended Complaint, Dkt. 180 (S.D.N.Y. July 22, 2021).  Plaintiffs are bringing this as a separate case, rather than simply opting into <u>Rusis</u> because the court in that case ruled that it would not (for now at least) allow any further opt-ins after March 26, 2021 (subject to a possible reopening of the opt-in period, should Plaintiffs there be permitted to file and obtain court-authorized notice to the putative class).  Plaintiffs here assert that they, and any opt-ins to this case, may nevertheless "piggyback" on earlier EEOC charges, including those filed by the named Plaintiffs in <u>Rusis</u>.  <u>See</u> <u>Tolliver v. Xerox Corp.</u>, 918 F.2d 1052, 1057 (2d Cir. 1990) ("[t]he purpose of the charge filing requirement is fully served by an administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a similar grievance elect to join a preexisting suit **or initiate their own.**" <u>Id.</u>) (emphasis added).

before his separation from IBM on approximately July 1, 2018.

5.      Plaintiff Matthew Love is forty-six (46) years old and resides in Ann Arbor, Michigan. Mr. Love worked for IBM for approximately five (5) years before his separation from IBM, effective on June 30, 2022.

6.      Plaintiff Robert Snyder is sixty-one (61) years old and resides in Cary, North Carolina. Plaintiff Snyder worked for IBM for approximately twenty-four (24) years before his separation from IBM, effective on October 31, 2021.

7.      Plaintiff Alison Heintz is fifty-eight (58) years old and resides in Weston, Connecticut. Plaintiff Heintz worked for IBM for approximately thirty-one (31) years before her separation from IBM, effective in October 2018.

8.      Plaintiff William Rice is sixty-five (65) years old and resides in Liverpool, New York. Plaintiff Rice worked for IBM for approximately forty-two (42) years before his separation from IBM, effective on July 31, 2019.

9.      Plaintiff Maria Stratakis is fifty-two years old and resides in Hudson, New Hampshire. Plaintiff Stratakis worked for IBM for approximately fifteen (15) years before her separation from IBM, effective on December 3, 2019.

10.     Plaintiffs bring these claims on behalf of themselves and similarly situated IBM employees across the country who may choose to opt in to this action pursuant to 29 U.S.C. §§ 216(b), 626(b).

11.     Plaintiff Rice also brings this case as a class action on behalf of himself and all similarly situated individuals who worked for IBM in New York, pursuant to Fed. R. Civ. P. 23.

12.     Defendant International Business Machines Corp. is a New York corporation with its principal place of business in Armonk, New York. IBM is an American multinational technology business that offers services and goods ranging from computing, cloud platforms, advanced analytics tools and others.

### III.   <u>JURISDICTION AND VENUE</u>

13.     This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought a claim pursuant to the federal Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq.* This Court has supplemental jurisdiction over the Plaintiff Rice's New York state law claims pursuant to 28 U.S.C. §1367.

14.     The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in Armonk, New York.

### IV.   <u>STATEMENT OF FACTS</u>

15.     Plaintiffs were among thousands of IBM employees to be separated from IBM recently, as the result of a shift in IBM's personnel focus to the generation of workers referred to as "Millennials" (which IBM defines as the generation born after 1980) that began in approximately 2012.  At that time, IBM began a program to reform itself into a leading company in the fields of cloud services, big data analytics, mobile, security and social media. As a part of this transformation, IBM endeavored to begin heavily recruiting Millennials in order to make the face of IBM younger, while at the same time pushing out older employees. At the direction of IBM's CEO Virginia Rometty and other corporate leaders, IBM instituted a plan to bring in 25,000 younger employees

that it referred to as "Early Professional Hires" or "New Collar Hires." At the same time, in order to make room for these younger workers, IBM sought to reduce its headcount of older workers over a period of several years.

16.     In an article published by ProPublica following an investigation of IBM's hiring practices, ProPublica reported that it estimates that "in the past five years alone, IBM has eliminated more than 20,000 American employees ages 40 and over, about 60 percent of its estimated total U.S. job cuts during those years." Peter Gosselin and Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (March 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

17.     As reported by ProPublica, IBM's shift in focus toward the Millennial workforce came as "IBM was falling behind . . . by failing to quickly devise innovative uses for the internet like its new rivals, Google, Facebook, and Amazon." Id. In response to that problem, IBM's CEO Virginia Rometty "launched a major overhaul that aimed to make IBM a major player in the emerging technologies of cloud services, big data analytics, mobile security and social media, or what came to be known inside as CAMS" and "sought to sharply increase hiring of people born after 1980." Id. Additionally, IBM embraced the belief that "CAMS are driven by Millennial traits." Id.

18.     At a 2014 IBM conference called "Reinvention in the Age of the Millennial," IBM announced its intent to "embrace the 'Millennial mindset'" and announced that "What's good for Millennials is good for everyone." See Reinvention in the Age of the Millennial, https://ibmcai.com/2014/12/16/reinvention-in-the-age-of-the-millennial/ (Dec. 16, 2014).

19.     IBM's CEO Virginia Rometty directly and explicitly made clear her desire to remove older employees from IBM in order to make room for younger hires and to increase the proportion of younger workers in business units throughout the company. She communicated with IBM's Chief Human Resources officer Diane Gherson regarding this desire, and they made plans and directed other top officials at the company to increase the proportion of younger workers through mass layoffs (called "Resource Actions"), as well as through other tactics, including not hiring back these older workers into other open positions.

20.     Throughout the company, IBM implemented this plan to replace its headcount of older workers with younger ones.  In conversations and corporate planning documents, executives and managers used coded terms such as "continuous talent refresh," "correcting seniority mix," and "shifting headcount" toward "Early Professional Hires."  Indeed, IBM had a goal of achieving 55% Early Professional Hires by 2020.  In 2017, IBM CEO Virginia Rometty boasted on CNBC's Mad Money that 50% of all IBM employees were now Millennials.

21.     IBM has reduced the population of its older workers through several methods. Many older employees have been laid off through reductions in force or layoffs, which IBM refers to as "Resource Actions."  (Meanwhile, IBM shields its youngest employees from layoff, exempting recent college graduates following their hire date.)  IBM has also reduced its population of older workers by terminating older employees for pretextual reasons, or by constructively discharging them, or by conditioning their continued employment on untenable choices they are unlikely to accept, such as relocation.

22.     Additionally, while older workers who lost their jobs through layoffs that IBM calls "Resource Actions" have frequently been encouraged to use IBM's internal hiring platform to apply for other open IBM positions for which they are qualified, IBM has generally prevented workers subject to these layoffs to be hired into other positions. IBM has put obstacles in the way of such workers being hired into different positions, thus helping to ensure that these older workers are removed from the company and younger workers placed into open positions.

23.     Prior to 2014, IBM provided lists to any workers who were laid off, which disclosed the positions and ages of all the employees laid off from their business units at the same time, as well as a list showing the positions and ages of all those in the business units that were not being laid off.  IBM distributed this information, presumably, in order to comply with the Section 626(f) of the ADEA, which requires disclosure of this information if an employer seeks to obtain a release of age discrimination claims from a group of employees. However, in 2014, in an apparent effort to conceal its systematic effort to shed its older workers, IBM stopped disclosing this information to the employees. While IBM could no longer include a release of ADEA claims in its severance agreements with its employees as a result, it opted instead to require its employees to agree to binding individual arbitration of those claims, in order to receive a small severance payment.  Many IBM employees who were laid off, including the named plaintiffs in this action, rejected the severance offer and did not sign the arbitration agreement.

24.     On approximately August 31, 2020, the Equal Employment Opportunity Commission ("EEOC") issued a classwide determination following an investigation of

age discrimination at IBM. In that determination, the EEOC found reasonable cause to

believe that IBM discriminated older employees through layoffs that took place between

2013 and 2018.  The EEOC explained in this determination letter that its investigation

uncovered "top-down messaging from IBM's highest ranks directing managers to

engage in an aggressive approach to significantly reduce the headcount of older

workers to make room for Early Professional Hires." The EEOC revealed that it had

analyzed data from across the company and that it was primarily older workers (85%)

who were in the total potential pool of those considered for layoff.  The EEOC stated in

the determination letter that its conclusion was supported by dozens of interviews it had

conducted across the company, and it rejected IBM's attempt to justify and defend each

of the 58 layoffs analyzed in that investigation through individualized explanations.

25.    Plaintiff McCormick worked at IBM as a Client Services Representative. In

early 2018, when he was 62 years old, Plaintiff McCormick's manager informed him that

he would be placed on a performance improvement plan ("PIP"). Prior to being placed

on the PIP, Plaintiff McCormick had observed that he had been assigned IBM's

problematic and less lucrative accounts, whereas his younger colleagues had been

assigned better accounts. Plaintiff McCormick raised this issue with his manager and

asked that the accounts be rebalanced between him and his colleagues. However,

Plaintiff McCormick was then placed on the PIP despite the fact that he had received

consistently positive performance reviews throughout his thirty-year career at IBM,

including his 2017 performance review. On approximately July 1, 2018, even though

Plaintiff McCormick performed well, IBM informed him that he was being terminated.

Plaintiff McCormick attempted to transfer into other positions at IBM before his

termination but was told that he was ineligible for transfer because he had been placed on the PIP.

26.     Plaintiff Matthew Love worked at IBM as a Competitive Intelligence Analyst beginning in approximately January 2017.  On May 31, 2022, Plaintiff Love received a letter from his manager informing him that he would be laid off by IBM effective on June 30, 2022. At the time that Plaintiff Love was notified of his layoff, he was 46 years old. Although Plaintiff Love applied to several positions through IBM's internal hiring platform for which he was qualified, he did not receive any responses to his applications. Other, younger individuals who were selected for layoff were ultimately able to get other positions within IBM. In the year leading up to his selection for layoff, Plaintiff Love observed that IBM hired several younger employees in his area.

27.     Plaintiff Robert Snyder worked at IBM as an IT Portfolio manager beginning in 1997. In approximately May 2020, Plaintiff Snyder was notified that he would be laid off in a resource action effective at the end of 2020. In September 2020, IBM informed Plaintiff Snyder that he could remain employed by IBM if he would take a different position as a Resiliency Project Manager and relocate from Raleigh, North Carolina to Columbia, Missouri. With respect to this new position, the rest of Plaintiff Snyder's team would not be located in Columbia, Missouri, but instead would be located in areas across the country. Additionally, IBM had an established Resiliency Center at the Research Triangle Park in North Carolina, near Plaintiff Snyder's home. Nevertheless, IBM insisted that he had to relocate to Columbia, Missouri. Although Plaintiff Snyder initially accepted this new position and agreed to relocate, later he informed his managers that he could not relocate due to changed circumstances

regarding family healthcare. IBM responded that relocation was mandatory, and as a result, Plaintiff Snyder was forced to retire. Plaintiff Snyder was constructively discharged by IBM. Plaintiff Snyder was 61 years old that the time of his separation from IBM.

28.     Plaintiff Alison Heintz worked at IBM beginning in August 1987. At the time of Plaintiff Heintz's termination, she held the position of Global Offering Leader, Cognitive Asset Engineering Services. In July 2018, IBM informed Plaintiff Heintz that she would be laid off in a resource action due to a skills adjustment by IBM. However, Plaintiff Heintz had received a high skill rating on her performance evaluation for the previous year. Later IBM shifted its justification for terminating her by saying that it had lost the contract she had worked on. In fact, IBM did not lose that contract. IBM again shifted the explanation for Plaintiff Heintz's selection, stating that her position was being eliminated.  Plaintiff was 54 years old when she was notified that she would be laid off.

29.     Plaintiff William Rice worked at IBM beginning in 1977. At the time of his termination, Plaintiff Rice held the position of Account SSR and Team Lead. In June of 2019, Plaintiff Rice's manager informed him that he would be laid off and that the reason for his layoff was related to a skills adjustment by IBM. At the time that Plaintiff Rice was notified that he would be laid off, he was 62 years old. Plaintiff Rice was IBM's education focal point for his group, meaning that he was responsible for providing skills training to other employees. Shortly before Plaintiff Rice was informed that he would be laid off, IBM hired several supplemental employees to work in his group, all of whom were significantly younger than Plaintiff Rice. Plaintiff Rice was among the oldest

members of his team. After he was laid off, two other younger employees took over his job responsibilities.

30.     Plaintiff Maria Stratakis worked at IBM as a Sales Representative beginning in 2004. Plaintiff Stratakis was assigned to IBM's office in Littleton, Massachusetts. In late 2018 or early 2019, IBM informed her that she would be required to relocate to Atlanta, Georgia. Plaintiff Stratakis informed IBM that she could not relocate to Atlanta due to family constraints. In September 2019, Plaintiff Stratakis's manager informed her that she was going to be laid off in a resource action, effective on December 3, 2019, due to a skills adjustment by IBM. Plaintiff Stratakis was 49 years old when she was laid off, and she was among the oldest members of her team. Plaintiff Stratakis was involved in training numerous younger employees during the period leading up to her layoff.

## V.     **COLLECTIVE ACTION ALLEGATIONS**

31.     Plaintiffs bring this case as a collective action on behalf of IBM employees who have worked anywhere in the country who may opt in to this action.

32.     These employees who may opt in to this collective action are similarly situated to the named Plaintiffs. They have all worked for IBM and have all been subjected to IBM's policy and practices of disproportionately targeting for separation (through pretextual termination, constructive discharge, or layoff) employees over forty (40) years old, and then precluding those employees from consideration for other open internal IBM positions for which they are qualified.

## VI.   <u>CLASS ACTION ALLEGATIONS</u>

33.     Plaintiffs Rice and Stratakis also bring this case as a class action on behalf of IBM employees over the age of forty (40) and were laid off, who have worked for IBM in New York or Massachusetts.

34.     This New York and Massachusetts classes meet the prerequisites of Fed. R. Civ. P. 23 in that:

a. The classes are so numerous that joining all members is impracticable. The exact number of the members of the class is unknown, but it is estimated that there have been well more than forty (40) IBM employees over the age of forty (40) whose employment has ended in these states. As a result, joinder of all of these individuals is impracticable.

b. There are questions of fact and law common to all of the putative class members, because all of those individuals were subject to IBM's uniform effort to shift its personnel focus to Millennials, leading to the unlawful termination or constructive discharge of a disproportionate number of older IBM employees, in violation of the laws of their respective states.

c. With respect to these common issues, the claims of Plaintiffs Rice and Stratakis are typical of the claims of IBM employees over the age of forty (40) who had worked in New York or Massachusetts and whose employment has ended.

d. Plaintiffs Rice and Stratakis, and their counsel, will fairly and adequately represent the interests of each class. Plaintiffs Rice and Stratakis have no interests adverse to or in conflict with the class members whom they

propose to represent. Plaintiffs Rice's and Stratakis's counsel have litigated and successfully resolved many dozens of class action cases involving employment law and have substantial experience representing employees in discrimination claims.

e.  The questions of law or fact common to all members of the class predominate over any questions affecting only individual members. The common questions include, among other things, whether IBM disproportionately ended the employment of older workers, and whether IBM refused to consider hiring those employees to other open positions for which they were qualified due to their age.

f.  Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in a highly inefficient duplication of discovery for many IBM employees in these states, briefing of legal issues, and court proceedings.

**VII.   EXHAUSTION OF ADMINISTRATIVE REMEDIES**

35.     Plaintiff Love timely filed a Charge of Discrimination with the EEOC. Additionally, the previous named Plaintiffs Bobbie Wagner and Chad Inniss who initiated this case also exhausted their administrative remedies before the EEOC prior to initiating this lawsuit. Moreover, the EEOC has investigated IBM's employment practices since at least 2014, and on August 31, 2020, issued a Letter of Determination finding reasonable cause to believe that IBM has engaged in age discrimination on a companywide basis.

## COUNT I

(Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*)
(On Behalf of Plaintiffs and Opt-In Plaintiffs)

36.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

37.     IBM's conduct in systematically targeting for layoff employees who are older than forty (40), including Plaintiffs, and refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the ADEA. IBM's violation of the ADEA has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiffs and similarly situated employees have lost their jobs and have been denied the fair opportunity to obtain new positions with IBM.

38.     This claim is brought on behalf of a class of IBM employees across the country who may choose to opt in to this case, pursuant 29 U.S.C. §§ 216(b), 626(b).

## COUNT II

(New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*)
(On Behalf of Plaintiff Rice and a New York Class)

39.     Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

40.     Plaintiff Rice brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in New York during the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Rice, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* IBM's violation of New York law has been knowing and willful. As a direct and proximate cause of IBM's discrimination, Plaintiff Rice and similarly situated employees have lost their jobs.

## COUNT III
(Massachusetts Anti-Discrimination Law, G.L. c. 151B § 4(1B))
(On Behalf of Plaintiff Stratakis and a Massachusetts Class)

1.      Plaintiffs re-allege and incorporate the above paragraphs by reference as if fully set forth herein.

2.      Plaintiff Stratakis brings this claim as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of IBM employees who have worked in Massachusetts during the relevant period and have been subjected to the discriminatory practices described herein. IBM's conduct in systematically targeting for separation its employees who are older than forty (40), including Plaintiff Stratakis, as well as refusing to consider those employees for other open IBM positions for which they are qualified, constitutes age discrimination in violation of the Massachusetts Anti-Discrimination Law, G.L. c. 151B, § 4(1B). IBM's violation of Massachusetts law has been knowing and willful. As a direct

and proximate cause of IBM's discrimination, Plaintiff Stratakis and similarly situated

employees have lost their jobs.

## JURY DEMAND

Plaintiffs request a trial by jury on all claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1.      Permission for Plaintiffs to notify other IBM employees of their right to opt-in to this action under the ADEA, pursuant to 29 U.S.C. §§ 216(b), 626(b);

2.      Find and declare that IBM violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*;

3.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count II and appoint Plaintiff Rice, and his counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in New York, and were laid off, constructively discharged, or terminated for pretextual reasons, and/or were not hired back into other positions for which they were qualified;

4.      Certify a class action pursuant to Fed. R. Civ. P. 23 under Count III and appoint Plaintiff Stratakis, and her counsel, to represent a class of IBM employees who were over the age of forty (40), worked for IBM in Massachusetts, and were laid off, constructively discharged, or terminated for pretextual reasons, and/or were not hired back into other positions for which they were qualified;

5.      Award compensatory damages, including back pay and front pay, and any other damages available, in an amount according to proof;

6.      Reinstate Plaintiffs and similarly situated employees to their positions;

7.      Award liquidated damages and all appropriate statutory and regulatory damages;

8.      Award all costs and attorney's fees incurred prosecuting this claim;

9.      Award interest;

10.     Issue injunctive relief in the form of an order directing IBM to comply with the ADEA and applicable state law;

11.     Any other relief to which Plaintiffs and class members may be entitled.

Dated: July 20, 2022

Respectfully submitted,

MARK MCCORMICK, MATTHEW LOVE,
ROBERT SNYDER, ALISON HEINTZ,
WILLIAM RICE, and MARIA STRATAKIS
on behalf of themselves
and all others similarly situated,

By their attorneys,


/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (NY Bar No. 2971927)
Thomas Fowler,
*pro hac vice*
Zachary Rubin (NY Bar No. 5442025)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, tfowler@llrlaw.com,
zrubin@llrlaw.com


## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of the

foregoing document was served on all counsel of record for Defendant in this matter by

electronic mail on July 20, 2022


/s/ Shannon Liss-Riordan
Shannon Liss-Riordan